UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| WILLIE BROWN, ) | |
| ) | |
| Plaintiff, ) | Case No.: 1:25−cv−07291-SAL-SVH |
| ) | |
| vs. ) | |
| ) | COMPLAINT |
| CONSTELLIS AND ) | |
| CENTERRA GROUP, LLC ) | |
| ) | |
| Defendant. ) | |
| _____) | |

### INTRODUCTION

1.  This lawsuit is brought by Willie Brown, an African American male, against Centerra, his employer, alleging violations of federal and state laws prohibiting discrimination based on race and disability, as well as a hostile work environment due to disability and state law claims. The plaintiff has been employed as a Security Police Officer at the Savannah River Site for over 21 years. During his tenure, he has consistently met or exceeded job performance expectations.

    The plaintiff asserts that Centerra engaged in discriminatory practices in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act (ADA). Specifically, the plaintiff claims that Centerra's enforcement of a grooming policy disproportionately affected African American employees, including himself, due to a medical condition known as Pseudofolliculitis Barbae, which is prevalent among African American men. Despite his ability to pass the required respirator fit test, the plaintiff was subjected to adverse employment actions, including being placed on unpaid leave, due to his inability to shave closely without causing severe skin irritation.

    Additionally, the plaintiff alleges that Centerra breached its contractual obligations under its anti-discrimination policies by failing to accommodate his disability and by fostering a hostile work environment. The plaintiff seeks relief for the harm suffered, including loss of income, emotional distress, and other damages resulting from Centerra's unlawful conduct. This action is brought to enforce the plaintiff's rights and to hold Centerra accountable for its discriminatory practices.,

### JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims arise under federal statutes, specifically Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act (ADA). These statutes provide for federal question jurisdiction due to the nature of the claims involving race discrimination, disability discrimination, and

hostile work environment based on disability. The court also has jurisdiction over the claims brought under state law.

3.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the claims occurred in this district. The plaintiff was employed at the Savannah River Site, located in Aiken, South Carolina, where the discriminatory acts took place. Therefore, this district is the appropriate venue for adjudicating the claims presented in this lawsuit.

4.  The defendant, Centerra, conducts business within this district, and the plaintiff resides in this district, further supporting the appropriateness of venue in this Court.

## PARTIES

5.  The plaintiff, Willie Brown, is an African American male, aged 50, who has been employed by the defendant as a Security Police Officer (SPO1) for over 21 years. He has consistently performed his duties satisfactorily and has been recognized for his contributions to the security operations at the Savannah River Site, a facility managed by the United States Department of Energy. The plaintiff suffers from a medical condition known as Pseudofolliculitis Barbae, which affects his ability to shave closely without causing severe skin irritation.

6.  The defendant, Centerra, is a corporation that provides security services to the United States Department of Energy, specifically at the Savannah River Site located in Aiken, South Carolina. Centerra is responsible for maintaining high security standards due to the sensitive nature of the materials stored at the site. The company has implemented various employment policies, including those related to grooming and anti-discrimination, which are central to the claims in this lawsuit.

7.  Defendant Constellis is the parent company of Centerra and operates with control over Centerra.

## CONDITIONS PRECEDENT

8.  On May 23, 2024 Plaintiff filed a Complaint with the Equal Employment Opportunity Commission.

9.  On July 2, 2025 Plaintiff received a right to sue from the EEOC.

10. Plaintiff has filed this Complaint within 90 days of the issuance of the Right to Sue.

## FACTS

11. The plaintiff, Willie Brown, has been employed by Centerra as a Security Police Officer at the Savannah River Site for over 21 years. Throughout his tenure, he has consistently met or exceeded job performance expectations and has maintained a commendable record without any disciplinary actions.

12. In March 2024, Centerra issued a memorandum mandating that all employees must be clean-shaven to ensure proper fitting of respirator masks, citing safety concerns. This policy disproportionately affected the plaintiff, who suffers from Pseudofolliculitis Barbae, a condition prevalent among African American men that causes severe skin irritation when shaving closely. Despite his ability to pass the respirator fit test without shaving, the plaintiff was placed on unpaid leave due to his inability to comply with the grooming policy as a result of his medical condition.

13. The plaintiff had previously informed Centerra of his medical condition at the time of his hiring, supported by documentation from his physicians. Despite this, Centerra failed to accommodate his disability, leading to adverse employment actions.

14. On or around March 2024, several African American employees raised complaints with Management regarding Defendant's racist policies and an altercation ensued during a meeting. This caused additional friction between Defendant's Caucasian Management and the African American Employees and caused Defendant's Management to take a retaliatory stance and engage in retaliatory actions towards Plaintiff and other African American employees.

15. The plaintiff was subjected to a hostile work environment through dismissive comments and unnecessary medical evaluations. Management, including Health and Fitness Manager Danny Bowles and Labor Relations Manager Kimberly Garland, failed to address the plaintiff's concerns and instead questioned the veracity of his medical condition, exacerbating his emotional distress,.

16. On March 16, 2024, the plaintiff resigned due to fear of termination but rescinded his resignation two days later. Subsequently, he was placed on a restriction list and sent home without pay, exacerbating his financial and emotional distress.

17. Throughout this period, the plaintiff sought medical assistance and provided Centerra with a waiver from his doctor, yet he continued to face discriminatory treatment. Meetings with management, including Health and Fitness Manager Danny Bowles and Labor Relations Manager Kimberly Garland, failed to yield a resolution. The plaintiff was subsequently subjected to further scrutiny and was required to undergo additional and unnecessary medical evaluations, which were perfunctory and indicative of a hostile work environment.

18. The plaintiff alleges that non-African American employees, such as Anthony Gonzales (HM) who was a fellow officer, were allowed to maintain facial hair without repercussions, demonstrating disparate treatment based on race. This differential treatment further supports the claim of racial discrimination under Title VII.

19. Centerra has policies with promissory language prohibiting discrimination in the work place. Centerra's actions violated its own anti-discrimination policies by failing to provide reasonable accommodations for the plaintiff's disability and fostering a discriminatory and hostile work environment. The breach of these policies resulted in financial and emotional harm to the plaintiff.

20. Despite presenting evidence of his condition and seeking reasonable accommodation, the plaintiff remained out of work and unpaid, leading to the filing of this lawsuit. The plaintiff contends that Centerra's actions were motivated by racial and disability discrimination, violating both federal laws and the company's own anti-discrimination policies.

21. As a result of Centerra's discriminatory practices, the plaintiff suffered significant financial loss due to unpaid leave and emotional distress from the hostile work environment. These harms are central to the claims presented in this lawsuit,

### FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS- RACE DISCRIMINATION(42 USC Section 1981 and Title VII) AND 42 USC SECTION 1981 RETALIATION

22. Each and every allegation set forth above is hereby repeated as fully incorporated herein.

23. Plaintiff is a member of a protected group on the basis of his race. Plaintiff was discriminated against based on his race in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 as amended.

24. Plaintiff is informed and believes that because of his race, African American, he was treated disparately from Anthony Gonzales and other similarly situated comparators.

25. Plaintiff is informed and believes that due to the complaints of African American employees Management took a hostile and retaliatory stance against the African American employees.

26. Plaintiff asserts that the on the job treatment and retaliation he received was pretextual. Plaintiff alleges Defendant intentionally initiated the discriminatory practices against Plaintiff based on his race and due to retaliation.

27. Defendant was reckless, wanton and intentional in the discrimination of the Plaintiff in the following particulars, to wit:

a. Knowingly subjecting Plaintiff to unnecessary and degrading medical procedures.

b. Subjecting Plaintiff to suspensions from the job.

c. Causing Plaintiff pecuniary harm.

28. In failing to protect Plaintiff from racial discrimination, preferential treatment or retaliation, Defendants acted with malice or reckless indifference to the federally protected rights set out under 42 U.S.C. Sec 1981 and Title VII of the Civil Rights Act of 1964, as amended.

29. The Defendant violated 42 U.S.C. Sec. 1981 and Title VII by allowing the racial discrimination, preferential treatment and retaliation to exist in the workplace.

30. Defendant's racial discrimination of Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

31. Due to the acts of Defendant, its agents, and its employees, Plaintiff is entitled to injunctive relief, punitive and/or civil damages.

## FOR A SECOND CAUSE OF ACTION
## BREACH OF CONTRACT

29. Each and every allegation set forth above is hereby repeated as if fully incorporated herein.

30. Defendant publishes and maintains an employee handbook and policies, which definitely assures employees that they will be treated in an nondiscriminatory and fair manner.

31. Plaintiff relied on the promises contained in the employee handbook and other related policies governing fairness in the work place, and which prohibit the discriminatory and unfair treatment that he experienced working for the Defendant.

32. Defendant further states, in its handbook, that it will comply with the requirements of the law in implementing equal employment decisions.

33. Plaintiff and Defendant entered into a binding and valid contract whereby Plaintiff relied on Defendant's policies and procedures pursuant to its employee handbook and the above policies, and procedures. Plaintiff also relied on the Defendant's reassurance that it must follow its Internal Equal Employment Opportunity policy in its treatment of its employees regarding its EEO policies and regarding investigations of allegations of wrongdoing. Defendant expressly disregarded its policies by discriminating against Plaintiff based on his race and disability and by retaliating against Plaintiff.

34. Plaintiff agreed to fulfill the duties of his position in exchange for valuable consideration and salary with the promise of being protected from unlawful discrimination.

35. Plaintiff performed his job duties with due diligence, however Defendant, through its agents, unjustifiably failed to perform its duties by failing adhere to its promises of protection under the employee handbook to include the Defendant's EEO policies.

36. All of these actions violate the contractual anti-retaliation provisions within Defendant's employment handbook (contract), and other contractual policies and procedures of the Defendant.

37. Defendant's conduct, by and through their agents, were done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

38. As a result of Defendant's breach of contract, Plaintiff has suffered actual, compensatory, physical, mental, emotional and consequential damages stemming from the breach and other such damages as are allowable by law.

## FOR A THIRD CAUSE OF ACTION
## BREACH OF CONTRACT ACCOMPANIED BY A FRAUDULENT ACT

39. Each and every allegation set forth above is hereby repeated as if fully incorporated herein.

40. Defendant publishes and maintains an employee handbook, which definitely assures employees that they will be treated in an non discriminatory and fair manner.

41. Plaintiff relied on the promises contained in the employee handbook and other related policies governing fairness in the work place and which prohibit the discriminatory and unfair treatment that he experienced working for the Defendant.

42. Defendant further states, in its handbook, that it will comply with the requirements of the law in implementing equal employment decisions.

43. Plaintiff and Defendant entered into a binding and valid contract whereby Plaintiff relied on Defendant's policies and procedures pursuant to its employee handbook and the above policies, and procedures. Plaintiff also relied on the Defendant's reassurance that it must follow its Internal Equal Employment Opportunity policy in its treatment of its employees regarding its EEO policies and regarding investigations of allegations of wrongdoing. Defendant expressly disregarded its policies by discriminating against Plaintiff on the basis of his race and disability and by retaliating against Plaintiff.

44. Plaintiff agreed to fulfill the duties of his position in exchange for valuable consideration and salary with the promise of being protected from unlawful discrimination.

45. Plaintiff performed his job duties with due diligence, however Defendant, through its agents, unjustifiably failed to perform its duties by failing adhere to its promises of protection under the employee handbook to include the Defendant's EEO policies.

46. All of these actions violate the contractual anti-retaliation provisions within Defendant's employment handbook (contract), and other contractual policies and procedures of the Defendant.

47. Defendant's conduct, by and through their agents, were done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

48. Defendant, by and through its agents, has failed to fulfill its obligation under its own written policies and has breached the terms thereof by reason of an intentional design on its part to defraud Plaintiff.

49. In furtherance of such intentional design, Defendant, through its agents, intentionally and maliciously placed Plaintiff in a position of being subjected to racial mistreatment. It was readily apparent that Defendant's false reassurances were fraudulent as Defendant's continual violations of its own policy demonstrated.

50. Defendant's conduct, by and through its agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract and handbook.

51. As a direct and proximate result of Defendant's breaches of the Agency policies, the Agency Handbook and contract and procedures Plaintiff has been maligned and has suffered damages to include loss of sleep, mental anguish, emotional pain and suffering, and other

compensatory, actual, and special damages due to the Defendant's failure to adhere to the terms of the policies established by the Defendant resulting in a breach of Plaintiff's employment contract accompanied by the above fraudulent acts as it relates to the Defendant.

## FOR A FIFTH CAUSE OF ACTION
## DISABILITY DISCRIMINATION

52. Each and every allegation set forth above is hereby repeated as if fully incorporated herein.

53. The plaintiff claims that Centerra violated the Americans with Disabilities Act by failing to accommodate his disability, pseudofolliculitis barbae.

54. The plaintiff is disabled under the ADA, as this condition causes severe skin irritation when shaving closely.

55. Plaintiff's skin condition is a disability under the ADA.

56. Centerra was aware of the plaintiff's condition, having received medical documentation at the time of his hiring. Despite this knowledge, Centerra enforced a grooming policy that exacerbated the plaintiff's disability, leading to adverse employment actions, including unpaid leave.

57. The plaintiff asserts that he could perform the essential functions of his job with reasonable accommodation, such as maintaining a shaving profile, which Centerra refused to allow. This refusal to accommodate constitutes a violation of the ADA.

58. In failing to protect Plaintiff from disability discrimination, preferential treatment or retaliation, Defendants acted with malice or reckless indifference to the federally protected rights set out under the Americans with Disabilities Act.

59. The Defendant violated the Americans with Disabilities Act by allowing discrimination, preferential treatment and retaliation to exist in the workplace.

60. Defendant's disability discrimination of Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

61. Due to the acts of Defendant, its agents, and its employees, Plaintiff is entitled to injunctive relief, punitive and/or civil damages.

## FOR A SIXTH CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT- RACE AND DISABILITY

62. Each and every allegation set forth above is hereby repeated as if fully incorporated herein.

63. Plaintiff is a member of protected classes on the basis of his race (African American) and disability (Pseudofolliculitis Barbae).

64. Plaintiff was subjected to unwelcome conduct by Defendants, including but not limited to:
    a. Targeted enforcement of a grooming policy that disproportionately impacted African American employees and individuals with Pseudofolliculitis Barbae;
    b. Dismissive and hostile conduct by management, including Health and Fitness Manager Danny Bowles and Labor Relations Manager Kimberly Garland, who questioned the legitimacy of Plaintiff's medical condition and subjected Plaintiff to unnecessary and perfunctory medical evaluations;
    c. Retaliatory actions following Plaintiff's and other African American employees' complaints regarding the discriminatory impact of the grooming policy, including increased scrutiny, exclusion from work, placement on a restriction list, and being sent home without pay.

65. The conduct described above was severe and/or pervasive, altered the conditions of Plaintiff's employment, and created a work environment that a reasonable person would find hostile or abusive. The conduct was unwelcome and directed at Plaintiff because of his race and disability.

66. Defendants' management knew or should have known of the discriminatory and harassing conduct directed at Plaintiff and failed to take prompt and effective remedial action to prevent or correct the hostile work environment.

67. As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer substantial embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, financial loss, and other nonpecuniary and pecuniary damages.

68. Defendants' actions were willful, wanton, and in reckless disregard of Plaintiff's federally protected rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Americans with Disabilities Act.

69. Due to the acts of Defendants, their agents, and employees, Plaintiff is entitled to injunctive relief, punitive and/or civil damages, and all other remedies available under law.

## JURY TRIAL REQUESTED

70. Plaintiff requests a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Award Plaintiff compensatory damages for all financial losses, including lost wages, lost benefits, and other economic losses, as well as damages for emotional distress, humiliation, pain and suffering, mental anguish, and loss of enjoyment of life;

2. Award punitive damages to Plaintiff in an amount to be determined at trial;

3. Grant injunctive relief, including but not limited to an order requiring Defendants to cease and desist from all discriminatory, retaliatory, and harassing practices on the basis of race and disability, and to implement and enforce effective anti-discrimination and anti-harassment policies and training; and reinstatement of Plaintiff to his position, or front pay in lieu of reinstatement, as appropriate;

4. Award Plaintiff reasonable attorneys' fees, costs, and expenses incurred in the prosecution of this action, as permitted by law;

5. Award Plaintiff pre-judgment and post-judgment interest as allowed by law on all amounts awarded;

6. Grant such other and further relief as the Court deems just and proper.

RESPECTFULLY BY:

s/Aaron V. Wallace
Aaron V. Wallace (11469)
Wallace Law Firm
1416 Laurel Street, STE B
Columbia, SC 29201
PH 803-766-3997
Fax:839-218-5786

July 13, 2025